A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

Gregory H. Luker
Plaintiff

742333
Inmate Number

VERSUS

Federal Bureau of Prisons
et al

(Enter above the full name of each defendant in this action.)

RECEIVED
FEB 10 2025
U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
DEPUTY CLERK

Electronic Filing Pilot Program

In accordance with the Procedural Rules for Electronic Filing Pilot Project, General Order 2012-01, inmates who reside in or are transferred into Louisiana Department of Corrections facilities participating in the Electronic Filing Pilot Program shall receive orders, notices and judgments by Notice of Electronic Filing ("NEF").

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. § 1983.

The names of **all parties** must be listed in the caption and in part III of the complaint **exactly the same.**

In order for this complaint to be filed, it must be accompanied by the filing fee of $402.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pre-pay the filing fee and service costs, you may petition the court to proceed in forma pauperis. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, DO NOT INCLUDE EXHIBITS.

Submit the complaint and pauper affidavit to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I. Previous Lawsuits

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? Yes ( ) No (✓)

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit
   Plaintiff(s): ______________________________

   Defendant(s): ______________________________

2. Court (if federal court, name the district; if state court, name the parish): ______________________________

3. Docket number: ______________________________

4. Name of judge to whom case was assigned: ______________________________

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?): ______________________________

6. Date of filing lawsuit: ______________________________
7. Date of disposition: ______________________________

C. Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?
   Yes ( ) No (✓)

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.

______________________________

______________________________

II. Place of present confinement: Dixon Correctional Institute (DCI)

A. Is there a prisoner grievance procedure in this institution?
Yes (✓) No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes (✓) No ( )

C. If your answer is Yes:

1. Identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed. I am refused to attain my records

2. What steps did you take? On many levels I notified, assisted and stood for the necessary actions that our nation's constitution requires in the most respectful manner until I found it necessary to report to authorities

3. What was the result? I received greater pressures, cruel and unusual punishment, denial of due processes, and deprivations of liberties sufficient to address the courts

D. If your answer is No, explain why not: ______________________________

______________________________

III. Parties
(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff(s) Gregory H. Luker
Address P.O. Box 788; Jackson, La. 70748

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

B. Defendant Federal Bureau of Prisons ~~is employed as~~ ________ ~~at~~ ________

C. Additional Defendants: Please see attached additional pages

IV. Statement of Claim

State here as briefly as possible the <u>facts</u> of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. **<u>Do not given any legal arguments or cite any cases or statutes.</u>** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

Please see attached additional Pages

V. Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. Attach no exhibits. Policies to be changed, injunctions to prevent them from being transgressed, officials to be held liable, punitive damages of upward sum of $150 million, and what this court deems

VI. Plaintiff's Declaration

1. I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

2. I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any costs assessed by the Court, which, after payment of the partial initial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3. I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

4. I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this 21st day of January, 2025.

Gregory H. Laker [signature]

Signature of plaintiff(s)

A Complaint Under the Civil Rights Act 42 U.S.C. § 1983
Gregory H. Luker versus Federal Bureau of Prisons Et Al

III Parties

B. Defendants

1) Federal Bureau of Prisons
2) All officials who are responsible for underwriting the Nutritional Compliance Policies employed at the Federal Bureau of Prisons
3) All officials who are responsible for underwriting the Chemical Agent policies employed at the Federal Bureau of Prisons
4) Louisiana Department of Public Safety & Corrections ~~(DOC)~~
5) Department of Corrections (DOC)
6) Secretary of DOC
7) Chief of Operations of DOC
8) Regional Wardens of DOC
9) Wardens of Dixon Correctional Institute
10) Dixon Correctional Institute (DCI)
11) All DCI Staff who are responsible for checking the specific guidelines of the Department's requirements of food in every aspect
12) Col. Williams
13) Lt. Col Harris
14) Major Criswell
15) Major Cain
16) Col Cutrer
17) Lt. Shoemaker
18) Major Shropshire
19) Major Weatherspoon
20) Lt. Williams
21) Lt. Bernard
22) Lt Breanna Parker
23) Company of the Phantom OC Chemical Agent utilized within the jurisdiction of DOC in DCI
24) State of Louisiana
25) United States of America

Gregory H Luker versus Federal Bureau of Prisons Et Al

IV. Statement of Claim

1) Policies were and remain insufficient to meet my dietary needs
2) During my pretrial detainment at St Tammany Parish Jail I had developed symptoms consistent with malnourishment
3) The food served to me by the facility was insufficient to maintain my health given my physiological and psychological factors
4) My Levels of energy were abnormally reduced
5) Underneath the surface of my lips and fingernails revealed a discoloration of blue and my fingernails became deformed
6) I was almost always cold
7) Sometimes I was so cold I needed to use a sheet to wrap around my neck to keep me warm enough to stop shivering
8) Dark half circles formed around my eyes
9) I was informing my mother of the insuffiencies on the phone
10) After failing to get a response from officials on my own I sent my mother an e-mail on the kiosk with instructions on how to get ~~this~~ help
11) The Parish Jail officials censored this specific transaction
12) My last ditch effort was to seek medical relief and so I did turn in my medical request
13) I informed the doctor of my symptoms and my insufficiencies in the diet I received
14) The doctor ordered blood tests
15) The doctor's conclusion was to refuse me sufficient portions
16) After all of my failed attempts I became lethargic feeling hopeless
17) One morning I was blatantly refused to go to yard-call
18) During my stay at that facility I recall only being allowed to go to the yard once a month
19) A fellow inmate informed me of my right to the yard and about the grevieance procedure while warning me of their retaliations for such
20) Immediately I filled out the form for relief and I was quickly shipped to Riverbend Detention Center into a dorm that had just had nine (9) stabbings before I got there that same day.

Gregory A. Luker versus Federal Bureau of Prisons Et Al

21.) It was hard to imagine food that was worse than St Tammany Parish Jail within the confines of the United States of America but Riverbend Detention Center pulled it off

22.) After some time I was able to the law librarian about the delimma with my food being insufficient from them

23.) Within that week I was shipped to Hunts ARDC Facility

24.) My religious books were refused and I was forced to ship them home and "donate" others

25.) At Hunts while in ARDC we were not allowed to go outside until I asked my aunt to call the officials

26.) She informed me that this behavior is to be expected in prisons

27.) The shower mats were changed in the shower stall in my dorm.

28.) I went to shower and slipped on the mat

29.) Both of my feet went up into the air.

30.) My head slammed on the curb at the threshold of the shower

31.) I remember coming to and witnessing my hand and feet flailing uncontrolably with a tangible numbness as I attempted to control them.

32.) The Major who responded to Sgt. Young's beeper gave direct verbal orders intimidating the inmates into forcing me up and placing me into a wheel chair

33.) When I arrived at the medical department the evaluating nurse concluded I shouldn't be fighting

34.) The nurse sent me away with an ice-pack, Tylenol, and no follow up appointment

35.) I was experiencing the room spinning in circles many times throughout the days that followed

36.) This was very concerning to me and brought me to panic-mode

37.) I began placing a sick-call every night

38.) Nobody ever showed up to pick it up

39.) Finally I began oneday to go around asking how I can get medical attention with pen and paper in my hands taking notes and was pointed to the same officer that responded to the beeper

Gregory H. Luker versus Federal Bureau of Prisons Et. Al

40.) The Major made some phone calls and had me to medical soon after

41.) After several fruitless and exhausting trips to medical I asked a doctor who passed by the waiting area, "I need help sir" to which he replied in a careless dismissing tone, "yes you do."

42.) I was desparate at that point to get some form of verification of my attempt to follow up for my symptoms

43.) I finally received a simple signature with a written description on the sick call form stating, "post fall F/U"

44.) My aunt would later give me comforting assurance that my symptoms were showing how I was getting better

45.) I was soon shipped to Dixon Correctional Institute (DCI)

46.) Work was so hard on me that I remember not being able to read even on my days off

47.) One day I was walking to the kitchen for chow and my shirt was grabbed by an electrical box fixed on the fence of the walk in front of the Chapel

48.) Msgt Jackson witnessed the incident and insisted on filing an A&I form and having me checked by medical

49.) As it turned out she was correct in doing so because I felt pains that were very intense from that incident the following days

50.) I would have pain in my neck so that I could not turn it for an entire day or so

51.) My back, in the lower reigion especially, would be so intensely in pain that at any time I tried doing something more than move my body slightly I would have shooting pains rendering me immobile

52.) I informed the nurse at medical and she denied me care with the statement, "I don't see how an abrasion on your arm can affect your neck".

53.) Later I was accepted into the Votech School for Auto Mechanics

Gregory Luker versus Federal Bureau of Prisons Et Al

54.) At the same time I was accepted I was diligently sought after by the clerk in the kitchen to serve as an orderly and a clerk in-training for the Major in the kitchen

55.) I accepted the call of duty and served the kitchen Major

56.) Unexpectedly, food became more plentiful as rewards for service and good behavior

57.) I would be moved to Honor Dorm - h right when Covid shutdowns brought severe restrictions on our facility

58.) My physical well-being was slowly being restored but at the same time I was being exhausted and drained by the long work hours and type of work expected of me

59.) I was caught in a daze as a donkey with a carrot on a stick

60.) Eventually I would ask about the law library but was told that it was for the Covid-19 pandemic

61.) Later I got differing opinions about my time limitation for PCR being extended due to the pandemic

62.) So I tried but failed to get any meaningful help or self-research for my non-frivilous issues of coercion

63.) I was given some cases but left alone puzzled as to what all the numbers and headings meant betwixt the jargon

64.) I ordered some books with a specific book about learning criminal law to learn the procedures and process

65.) I asked about my books and I received a phone call from the Mail Room and was told by Sgt Jackson that my books can be investigated as long as they want

66.) To this day I have not received the books I ordered nor my money for reimbursment of such

67.) Neither have I received a letter of rejection

68.) Someone wrote a letter for an extention in my district for PCR and only one month was granted

69.) Finally I simply stated to the court my issue and was denied due to lack of justification

70.) I thought it would spark an investigation

1-16-25 Page 5 draft

Gregory H. Luker versus Federal Bureau of Prisons Et Al

~~71.) Periodically throughout my work as the Major's orderly and clerk in training Cpt. Lenoir would ask me if I could take over as main clerk~~

71.) While Lenoir was Captain in the kitchen serving in the kitchen early on he would frequently ask me in a growing intense manner as to whether I could handle being main clerk for the kitchen and finally I answered yes

72.) There became an intense struggle for position of Major in the Kitchen after this

73.) Major Blackard was a strict yet well informed Major who paid attention to the details of the things that were formerly left untended and unaddressed

74.) Through being informed by Cpt Lenoir Major Blackard along with Cpt. Lenoir questioned me as to what my decision was going to be for my position as clerk in the kitchen.

75.) I was actually prepared to give my resignation this moment but I agreed to take his position because I thought I was going against all of security by not taking that call.

~~76.) After Major B~~

76.) Major Blackard soon was removed from his post for some reason

77.) The following Major Cutner would only remain in this post for three months

78.) Then Major Lenoir became Major in the kitchen

79.) Major Lenoir gave 80 one-quarter-pound hamburgers to Hurst in the kitchen which seemed to me like a kitchen reward for kitchen workers but I perceived it was for Hurst to sell

Major

80.) I confronted Major Lenoir about this incident with boldness

81.) Soon I was coaxed into becoming a Law Library Inmate Counsel by Michael Shelton

~~who was criminally charged with an incident~~ dealing drugs

82.) Quickly after I took the bait I was lied on and pressured to do wrong things → namely steal from the kitchen

83.) Jade Bobineax became keen on what was taking place and reported the malicious behavior to Dan Cavalier

Page 6 Draft

1-16-25

Gregory H. Luker versus Federal Bureau of Prisons Et Al

→ Foot Medical event placed on back

84.) Major Lenoir was removed from the kitchen and Lt Shoemaker was practically begging me to work for Major Montgomery

85.) I agreed with stating my reason as "so that nobody snakes her out of the kitchen".

86.) Don Cavelier was attempting to keep me from being released for some reason and said I need a warden's signature before I can move back to the kitchen.

87.) I asked Warden Wesely for this reason and warden Wesely didn't say much; however he did seem to warn me that Major Montgomery was "old school"

88.) Major Montgomery quickly became unreasonable with me

89.) She also seemed to praise and reward those who stole more from the kitchen for their personal sales

90.) My work partner was doing the very same thing and getting praised for stealing for his clubs and events

91.) I finally got evidence and presented it to Major Montgomery and she became angry and stated "everybody steals" as she stormed out the door

92.) Instead of charging him they moved him to lead the unit 1 library

93.) Immediately Christopher Hicks was placed over me and was doing the accounting himself to where I would have less ability to report and see flaws

94.) Eventually I began to work weekends only as to avoid association and liability and not to exhaust myself for no good reason since it would prove pointless

95.) I was offered a position in a clerical spot for the chaplain

96.) Instead of reclassing I simply offered my time which proved to be many hours

97.) Later I would be harassed by the classification orderly and witness foul play on the computer → He tried to fight me. I heard from someone. He stated he would get me out of the dorm

98.) When I asked the Chaplain for a password and reported the foul play he attempted to cover things up with a "sh"

1-17-25 Draft Page 7

Gregory H. Luker versus Federal Bureau of Prisons E+HI

99) The Chaplein was suspended for a reason associated

100) I joined a softball team

101) Michael Shelton received all brand new cletes for his team

~~102) Our team did not even though we registered and requested~~

102) Half of our team received cletes and the other half did not

103) I did not receive cletes

104) We had a call out scheduled game and I slipped and fell

105) My back got hurt and I followed up with medical

106) I got the run around trying to get help ~~out~~

107) ~~By the time~~ When I saw Nurse Practitioner Jenny Watson she asked and I ~~to~~ informed her that I had irregular bowel movements consistent with blockage

108) She ordered a trio of pain medication without a stool softener

109) X-Rays were ordered

110) No follow up appointment was made

111) The X-rays took so long that I believe that the fractures that I did feel were ~~treated~~ already healed by that time

112) I was enticed to do work in the greenhouse since the fall

113) Myself and the person working with me informed Warden Haley our experience with mold in the greenhouse while pressure washing he approved

114) later we were confronted with demands to leave the greenhouse without reason for why we were asked to and intentionally in front of us was given a reward of food clearly not from the kitchen but purchased food

115) During the time ~~[illegible]~~s we were in the greenhouse I was granted to have a new organization by Warden Bickham

116) This was carried to and approved by Chaplain Payne

117) Inmate Carlos Lampley was in strong opposition to our religious organization and prescribed time of service

118) Officers began to agree with him and allowed no proper space as afforded to other religious organizations where an appropriate service could take place

1-17-25 Draft Page 8

Gregory H. Luker versus Federal Bureau of Prisons Et Al

119) I informed Lt. Col. Harris with a copy of the write and was denied relief

120) I informed Chaplain Payne and he did nothing

121) I later asked Chaplain Payne what the purpose of his job was as an official serving in capacity as Chaplain if not to protect the religious freedoms and rights of inmates where we are vulnerable to excessive environmental conditions controls + pressures

122) Eventually ~~Warden~~ Chaplain took our call-out off of the rotation schedule without asking me for an update

123) ~~During these~~ Just before this process of removing my religious callout Warden Haley removed me from the kitchen clerk position in the kitchen without a word

124) When I asked why Warden Haley simply stated, "because they said you don't do any work," and left it at that

125) Later when I was needed to fix shoddy work from the clerk that was left behind and I was the only other who knew how to report and order

126) When I reported to her office after being called I told her she gave me no indication of my performance falling below acceptable standards

127) She informed me that she gave no such report to Warden Haley

128) I told Major Shropshire that I found her claim incredible

129) However, because of my ~~faith~~ religious faith and rites I did not refuse her request for assistance

130) As time went on I found Major Shropshire stating to me one thing and to ~~others~~ her officers another

131) She stated to me she wanted to stop the stealing and to have all the food required to be placed in the inmate's food

132) So as my duty followed I set out to account for all of the food which was being utilized in any meals prepared to determine where it came from as well as to where it was going

1-17-25 Draft Page 9

Gregory H. Luker versus Federal Bureau of Prisons Et Al

133.) A memo was supposed to be prepared by me and signed by the Major to approve any food to be used for any purpose beside the standard meal issue.

134.) I had asked the inmate ~~clerk~~ who was in control of inventory in the ~~warehouse~~ dry food storage warehouse and he threatened me about doing my duties

135.) I immediately reported the incident to Lt. Shoemaker

136.) ~~Lt~~ Lt Shoemaker stated to me, "you should just go ahead and put on ~~my~~ badge Luker."

137.) Lt Shoemaker and her sgts laughed me to scorn

138.) I reported the incident to Major Aucoin immediately by stating "they inmates can just cook whatever they want"

139.) Major Aucoin directly got on the phone and confronted Lt. Shoemaker

140.) Lt Shoemaker retaliated when Major Aucoin made her discard the unscheduled food and after she threw the food away she dragged the ~~the~~ garbage can she used to throw away the food about 30 ft accross the kitchen to present me to the whole kitchen and stated loudly "there, you happy!"

141.) Later, Major Shropshire sided with the inmates stating she gave prior authorization but I had not been notified

142.) I knew at this point further retaliation would occur and the only thing left for them to take from me was my honor dorm status and I knew they were determined

143.) The following morning ~~a~~ a scullery worker was coming to my dorm's door waiting and asking about where I was

144.) His intention was to harm me

145.) After this I did not work in the kitchen any longer

146.) I was determined to and wrote about these incidents and more because it became clear to me the problem was much deeper than some wayward inmates

147.) On September 3rd 2024 I wrote my first emergency grievance because of a hunch that they would finally strike with some form of retaliation and I would finally spill the beans

Page 15 draft Gregory H. Luker versus Federal Bureau of Prisons Et Al

1-18-25 The statement from secondary source proved to be true when in fact I had no way of knowing the call out for legal mail was next day

135) I was never afforded Ice for my ice pack 7) My nails became deform

148) ~~Early in the month~~ ~~On the 21st day of November Warden Haley was placed on administrative leave~~

149) ~~When Warden Haley came back I tried to engage him~~ ~~The tip came to me before I ever saw that I had an opportunity to see the other~~

148) On the 21st day of November I was placed on the Emergency Reclass for no ~~apparent~~ reason

149) Warden who gave the orders to have me emergency reclassified did not inform me of the emergency even though he was at work the whole day

150) There was no emergency to reclass me to another dorm especially one with greater dangers

151) Knowing danger was what was intended I packed my belongings to be placed into protective segregation

152) Major Criswell was called to come and speak to me. Immediately I should have justification and requested for protection

153) What I was confronted with was nothing more than a dead-set unreasoning tyrant rather than a Correctional expert knowing his laws to govern the facility to protect those who have a sincere need for his ~~[illegible]~~ perception

154) While we were conversating about my need for protection he gave me no time where actual fulfillment of his ~~demands~~ order could be made before he sprayed me with chemical agent

155) At no time did I tell him "no" for any thing

156) Major Criswell caused me to have a ~~[illegible]~~ response that was unconscious (intentionally) through fear

157) After that, while sitting ~~[illegible]~~ in shock, Major Criswell and Major Cain both began punching me in my face and side of my head near my temple.

158) While my hands were behind my back Major Cain ~~[illegible] [illegible] and my head body bent over Major~~ squeezed my chest and shoulders so hard I couldn't breath ~~and my shoulder~~

159) My shoulder has been ~~going numb in the~~ giving me trembles ~~days~~ like I have never seen before

1-19-25

Draft Page 11

Gregory H Luker versus Federal Bureau of Prisons Et Al

160.) I was placed in a shower and asked to remove my belt, pants, and shoelaces but was not told to shower nor given any items to take a shower nor given time granted to take a shower.

161.) No policy was in place to remove my clothes and wash them

162.) The chemical agent stuck to my clothes and burned me for days

163.) I was not given any service to launder my clothes with chemical agent stuck to them and burned me for days

164.) No policy was in place to remove chemical agent from walls of cells

165.) The chemical agent stuck to both cells I was confined ~~in~~ ~~smelled so bad that it took me 32 hours to go to sleep~~

166.) The smell and the burn was so intense that I could not sleep for 32 hours leaving me to be awake by force for 44 hours

167.) The cell I was immediately placed in for almost 24 hours was not made to house inmates for that long

168.) I don't believe the cell was made to hold as many inmates as was placed in there with me

169.) In this maximum security cell ~~peop~~ inmates had cigarette lighters and drugs and tobacco to smoke to which I had to ingest by force of the ~~ignorance~~ neglect of Dixon Correctional Officials because administrative officers are either not training employees correctly or they want this type of environment

170.) Inmates urinated on the floor which I was laying on because there was no toilet and no cushion.

171.) I asked later in the night and was given opportunity to wash my face but my clothes placed the chemical agent immediately back on my face

172.) ~~My property for my segregation~~ My property granted to me was lacking in approved items that I use to maintain proper hygene

173.) I was intentionally deprived of my religious items such as my bible

174.) I was placed in a cell with no blanket or sheets for days

175.) The cell had so much chemical agent on the wall that the walls were discolored and stunk bad

Page 12 Draft

1-19-25

Gregory H Luker versus Federal Bureau of Prisons Et Al

176) I wasn't given a mop for weeks and only once before 40 days had passed

177) No sanitizer or chemical cleaner was given until after 40 days to clean such a cell as mine where a septic waste environment was contained therein

178) No toilet brush was ever given

179) The floors puddle with water and the walls sweat and the ceiling drips with chemical agent for days after hard rains

180) No policy was in place to mitigate conditions of rain water flooding cells because a simple check of drainage on the landscape would prove the sidewalk slants to keep water against the building to cause such an environment

181) I wiped the chemical agent off the wall

182) I felt a severe burning sensation on my finger especially

183) The sensation of being burnt has not gone away

184) Daily my fingers, wrist, and whole left arm would go completely numb

185) Grooming is not made available where my facial hair gets into my food

186) Food served is ensured to be cold by not placing it in its appropriate container

187) Food is not sufficiently supervised to prevent unlawful practices

188) Food servers in maximum security are arbitrarily picked and not trained

189) Deep peelings and cracks exist in almost every plate where debris and bacteria contaminate

190) Servings are frequently not appropriately sized sufficient to maintain health

191) No hand washing stations with sanitizing soap exists in the blocks

192) I have not been allowed to go outside once since administrative segregation

193) Though I inform my rights have been violated and need for my legal materials I'm denied

194) My religious books are denied due to an investigation ongoing

195) I was declared unruly and punished due to excercising my rights R-5

196) I was not given a fair hearing where my right to give a defense was denied

197) ARDC officer Mr. Russ told me his supervisor would not allow me to have my requested copies to access the courts

198) To get copies for legal work I was required to write answers to questions before I was denied

199) Fungus developed on my extremities and caused me to scratch until I bled

200) Sufficient electrolyte salts are not provided to hydrate my body

Gregory Luker #742333
5568 Highway 68
Jackson, La. 70748

U.S. MARSHAL
OK
SCREENED

Baton Rouge P&DC 708
SAT 08 FEB 2025 AM

United States District Court
Middle District of Louisiana
777 Florida Street Suite 139
Baton Rouge, La. 70801-1712

Attn: Clerk of Court

CERTIFIED MAIL
7020 0090 0001 4170 8571